**William ELLIS, Sr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 02S00–9609–CR–625.

Supreme Court of Indiana.

March 16, 1999.

Timothy E. Stucky, Wyss, McNellis, Riebenback & Myers, Fort Wayne, Attorneys for Appellant.

Jeffery A, Modisett, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, Attorneys for Appellee.

ON DIRECT APPEAL

SULLIVAN, Justice.

Defendant William Ellis, Sr., was convicted of murder for shooting another man to death. Finding no trial court error, we reject Defendant's multiple challenges to his conviction, including claims that there was insufficient evidence of his guilt and that his confession was improperly admitted into evidence. We also affirm the trial court with respect to Defendant's sentencing claims except for one matter which requires remand.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

On March 31, 1995, Defendant, John Runner and James Jones went to the home of Defendant's sister, Stacey Ellis, in Fort Wayne. Soon afterwards, they were joined by the victim, Rickey Burris.

Burris, accompanied by Defendant, Runner, Jones and Stacey Ellis, went for a drive in Burris's car. Returning to Stacey Ellis' home, Burris and Stacey Ellis began arguing. During the argument, Runner pulled Burris out of the car and struck him. Entering Stacey's home, Runner and Jones began to beat Burris. Defendant and Jones then placed Burris in the trunk of Burris's car.

Defendant and Runner, driving Burris's car, picked up Defendant's brother, Christopher Ellis, and the three drove to an abandoned building on Pontiac Street. Upon arrival, Christopher handed Defendant a gun and the two took Burris out of the trunk. Defendant and Christopher Ellis then took Burris to the basement of the building, where Defendant placed Burris on a chair and shot him repeatedly.

On May 3, 1995, Fort Wayne police received a tip regarding Burris's death. Later that day, police found Burris's body in the basement of the Pontiac Street building. An autopsy revealed that Burris had been shot three times in the back of the head as well as in his left arm and upper torso. The cause of death was multiple gunshot wounds to the head.

On the morning of May 9, 1995, Defendant, and his brother and sister, Christopher Ellis and Stacey Ellis, were picked up by members of the Fort Wayne Police Department and taken in for questioning concerning the

death of Ricky Burris. The three were separated and questioned by officers Frederick Rogers and Don Flueckiger. The officers first questioned Stacey Ellis, who implicated Defendant and herself in Burris's beating and death.

Officers next spoke with Defendant. Defendant was advised of, and waived, his *Miranda* rights prior to speaking with police. In his initial statement, Defendant denied any involvement in Burris's death. However, upon viewing a videotaped statement given by Stacey Ellis implicating him, Defendant gave a second statement admitting that he was present at the Pontiac Street building but contending that James Jones was responsible for Burris's death.

Officer Flueckiger then examined Defendant's shoes and noted to Defendant that his shoes were approximately the same size as shoe prints found near Burris's body. Upon hearing this, Defendant admitted that he entered the basement, set up a chair and placed Burris on the chair. He insisted, however, that Jones shot Burris. Officer Rogers then interviewed Christopher Ellis, who implicated Defendant and himself in Burris's death, stating that he and Defendant had entered the basement of the Pontiac Street building.

Officer Rogers then interviewed Defendant again. At approximately 5:06 p.m., Defendant stated that he understood his *Miranda* rights and wished to waive them. Officer Rogers then played some of Christopher Ellis's videotaped statement. After viewing the statement, Defendant gave a third statement. In this statement, which police videotaped, Defendant admitted that he and Christopher Ellis had entered the basement on Pontiac Street, that Jones was not present, and that he himself had shot Burris.

### Discussion

Defendant presents six issues for this Court's consideration: (1) whether the State presented sufficient evidence to sustain Defendant's conviction for murder; (2) whether the trial court erred in denying the Defendant's motion to suppress his confession; (3) whether the trial court erred in admitting the fact that Defendant's brother was dead with-

out also permitting evidence as to the date and cause of his death; (4) whether the trial court erred in refusing the Defendant's tendered jury instruction concerning the burden of proof; (5) whether the trial court erred at sentencing by failing to consider mitigating circumstances and enhancing the sentence; and (6) whether the trial court utilized the proper sentencing statute.

### I

Defendant contends that because the State presented no physical evidence tending to incriminate him, the evidence was insufficient to support his conviction for murder. We disagree.

■ Our standard of review for sufficiency of evidence claims is well established. This Court neither reweighs evidence nor resolves questions of credibility; rather, we consider only the evidence most favorable to the judgment with all reasonable inferences to be drawn therefrom. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind.1998); *Jones v. State*, 689 N.E.2d 722, 724 (Ind.1997). We will affirm a conviction if, considering that evidence and those inferences, we find substantial evidence of probative value to support the judgment. *Blanche* 690 N.E.2d at 712; *Minter v. State*, 653 N.E.2d 1382, 1383 (Ind. 1995).

■ Although the police never recovered the murder weapon in this case, Defendant gave a videotaped statement admitting that he shot the victim. In his account, Defendant said that the victim was beaten at Stacey Ellis's home and placed in the trunk of the victim's car. Defendant also stated that he drove the victim's car to pick up Christopher Ellis and that he and Christopher took the victim to the basement of the building on Pontiac Street. And Defendant admitted that once in the basement, he repeatedly shot the victim.

Defendant's challenge to the admissibility of this statement aside,[1] additional evidence corroborates his account. First, physical evidence collected at Stacey's home containing blood and proteins of human origin corrobo-

---

1. See part II, *infra*.

rated Defendant's account of the fight. Also, James Jones and John Runner gave accounts of the fighting at Stacey's home similar to that offered by Defendant. Runner testified that after Jones and Defendant beat the victim and placed him in the trunk of the victim's car, he, Defendant, and Christopher Ellis drove to the building on Pontiac Street. Runner further testified that Christopher Ellis gave Defendant a gun, after which Christopher Ellis and the Defendant entered the building with the victim, shots were fired, and the two men returned without the victim. Finally, Defendant's statement proved consistent with the murder scene, where the police found the victim near a chair in the basement of the Pontiac Street building and subsequent tests revealed that the victim had been shot repeatedly with the same gun.

■ Defendant questions the credibility of John Runner's and James Jones's testimony, characterizing it as "self-serving, contradictory and conflicting." (Appellant's Amended Appeal Br. at 11). However, judging the credibility of witnesses lies squarely within the province of the jury and we will not reassess its credibility determinations. *Gee v. State*, 526 N.E.2d 1152, 1153 (Ind.1988). We find that there existed substantial evidence of probative value from which the trier of fact could find Defendant guilty beyond a reasonable doubt.

## II

Defendant contends that the trial court committed reversible error by admitting into evidence his videotaped statement. In arguing that he gave the incriminating statement involuntarily, Defendant claims that (1) the police used deceit with respect to footprints found at the scene of the crime; (2) the police used improper threats of prosecution of Defendant's brother and sister; and (3) at the time of his interrogation Defendant was suffering from a lack of sleep and was impaired by alcohol and drugs.

■ The decision whether to admit a defendant's custodial statement is within the discretion of the trial court. *Horan v. State*, 682 N.E.2d 502, 509 (Ind.1997); *Jones v. State*, 655 N.E.2d 49, 56 (Ind.1995). In making a determination as to the voluntariness of a statement, the trial court must consider the totality of the circumstances. *Fields v. State*, 679 N.E.2d 1315, 1320 (Ind.1997). The court attempts to insure that a confession was not obtained "through inducement, violence, threats or other improper influences so as to overcome the free will of the accused." *Id.* (quoting *Collins v. State*, 509 N.E.2d 827, 830 (Ind.1987)).

■ When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Jones*, 655 N.E.2d at 56. The record shows that once in custody, the police advised Defendant of his *Miranda* rights, he signed a waiver form, and stated that he understood his rights and wished to give a statement. The police questioned Defendant for just over four hours with interruptions. The police later testified that this time was typical in murder investigations. Before giving his final statement, police advised Defendant of his *Miranda* rights a second time. Defendant again signed a waiver form and indicated that he wished to give a statement. From this evidence, we find that the trial court could have properly concluded that Defendant knowingly and voluntarily waived his *Miranda* rights.

■ As for Defendant's assertions that the police deceived and threatened him during the interrogation, we find that the record does not support these claims. Defendant claims that the "police misrepresented to [him] that they had evidence of a shoe print which would be similar to the shoes which [he] was wearing." (Appellant's Amended Appeal Br. at 12). However, in investigating the scene of the crime, the police did indeed observe footprints in the basement similar in size to Defendant's shoes. We find that this observation provided a good faith basis for suggesting to Defendant that his shoes may have left the footprints.

■ Similarly, Defendant contends that the police "threatened to arrest his brother and sister" if Defendant refused to cooperate. (Appellant's Amended Appeal Br. at 14). However, at the time of Defendant's

interrogation, both Christopher and Stacey Ellis were present and under interrogation at the Fort Wayne Police Department, and both had given statements implicating themselves in the victim's death. We find their statements provided a good faith basis for suggesting to Defendant that the police could arrest his siblings in connection with the victim's murder.

Defendant relies on this Court's decision in *Hall v. State*, 255 Ind. 606, 266 N.E.2d 16 (1971), in asserting that the officers' suggestions that they could arrest Defendant's siblings in connection with the victim's murder were threats of the sort that would call into question the voluntariness of Defendant's statement. (Appellant's Amended Appeal Br. at 15–17). In *Hall*, the police made threats to the defendant that if he did not confess, they would arrest his wife, charge her with the crime, and place his small children in the custody of others. *Id.* at 19. This Court found that "when the threat to so charge and attempt to convict is made by police to 'encourage' the [defendant] to make a full confession, we cannot say as a matter of law that the confession is given freely an voluntarily by the [defendant]." *Id.* at 19.

We find Defendant's reliance on *Hall* to be misplaced. First, in *Hall* the police gave a "clear implication" to the defendant that if he did not confess, they would arrest his wife. *Id.* at 19. Here, the police did not state that Defendant must confess to avoid the arrest of his siblings. Rather, they suggested that given the cooperation of Defendant's siblings, Defendant's own lack of cooperation could only magnify their roles as suspects in the crime.[2] In any event, we find that the alleged "threats" alone did not render Defendant's statement involuntary. Considering the fact that Defendant's siblings gave statements implicating him in the victim's death, we are not convinced that the possibility of their arrest would have had an unduly coercive effect on Defendant.

Finally, Defendant claims that he was under the influence of pain relievers and alcohol during the interrogation, thereby rendering his statement involuntary. However, we have previously held that a confession may be given knowingly and voluntarily, notwithstanding voluntary intoxication. *Wilcoxen v. State*, 619 N.E.2d 574, 577 (Ind.1993); *Thomas v. State*, 443 N.E.2d 1197, 1199 (Ind. 1983). This Court will deem a defendant's statement incompetent only when he is so intoxicated that it renders him not conscious of what he is doing or produces a state of mania. *Brooks v. State*, 683 N.E.2d 574, 576 (Ind.1997) (citing *Lambert v. State*, 643 N.E.2d 349, 353 (Ind.1994)). Intoxication to a lesser degree goes only to the weight to be given to the statement and not its admissibility. *Id.*

Testifying at trial, Officer Rogers described Defendant's appearance as follows:

> Mr. Ellis appeared to be quite alert, he was aware of where he was at. He spoke well. He was aware of the time. He was aware that I had spoke to his sister. He was aware that his brother was present. His speech was clear. He was steady on his feet. He was not yawning . . .

(R. at 158).[3] We find that the evidence was such that a reasonable trier of fact could conclude that Defendant's statement was knowingly and voluntarily given.

### III

Defendant contends that the trial court committed reversible error by admitting the fact that Christopher Ellis was deceased without also permitting evidence as to the date and cause of his death. We disagree.

During the direct examination of the State's last witness, the State asked the trial court for permission to elicit testimony showing that Christopher Ellis was deceased. The State was concerned that the jury might

---

**2.** At trial, Officer Rogers described their suggestions as follows:

I clarified to him that his brother and sister had been very cooperative in this matter and his stubbornness could indicate were [sic] involvement as participants, and they could be arrested for their actions; and it was a very stupid thing

of him to involve his brothers . . . it would be his brother and sister in this.

(R. at 142).

**3.** We also note that before the interrogation, Defendant himself stated that he was not under the influence of any "alcoholic drug." (R. at 127).

wonder why prosecutors never charged Christopher Ellis in the victim's death. The parties agreed to stipulate that Christopher Ellis was deceased. Subsequently, the trial court read the stipulation to the jury.[4]

Defendant argues that "[b]y advising the jury only that Christopher Ellis was deceased, [the jury] was erroneously able to assume that his death was the only reason why he too was not charged in connection with the death of [the victim]." (Appellant's Amended Appeal Br. at 9). Defendant insists that had the court informed the jury of the date and circumstances of Christopher's death—specifically that Christopher's death occurred three months after Defendant's arrest and resulted from a gun shot wound sustained during the commission of a violent felony—the jury could have concluded that Christopher, and not Defendant, was responsible for the death of the victim.

■■■■ We find nothing in the record to indicate that Defendant objected when the trial court instructed the jury that Christopher Ellis was deceased. Nor did he propose a stipulation containing additional information.[5] By stipulating, without qualification, to the evidence that he now challenges, Defendant invited the very error he now claims is reversible. "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995); *Berry v. State*, 574 N.E.2d 960, 963 (Ind.1991).

### IV

Defendant argues that the trial court committed reversible error by refusing to give his tendered jury instruction. At trial, Defendant tendered the following instruction:

> Mere suspicion of guilt or opportunity to commit the crime are insufficient to support a conviction.

The trial court refused this instruction because other instructions covered it. We agree.

■■■■ When reviewing whether error resulted from the refusal of a tendered instruction, we must determine whether (1) the tendered instruction correctly states the law, (2) there is evidence in the record to support the giving of the instruction, and (3) the substance of the tendered instruction is covered by other instructions that were given. *Hartman v. State*, 669 N.E.2d 959, 961 (Ind. 1996); *Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994).

■■■■ We note that both the preliminary and final instructions informed the jury that the State had the burden of proving Defendant guilty beyond a reasonable doubt. Moreover, they explained that a reasonable doubt is "a doubt based upon reason and common sense and not a doubt based upon imagination or speculation." We find that these instructions adequately covered the substance of the Defendant's tendered instruction. Therefore, the trial court did not err in refusing Defendant's tendered instruction.

### V

■■■■ Defendant maintains that his sentence for murder was excessive and manifestly unreasonable. The trial court imposed an enhanced sentence of 60 years. When en-

---

4. The trial court's stipulation read as follows:
   COURT: Ladies and gentlemen, counsel have entered into a stipulation, similar to other stipulations that we had yesterday that you should accept as true as though they had been testified to by a live witness, simply that Christopher Ellis is currently deceased.
   (R. at 494).

5. Defendant contends that he requested that the additional information be included in the trial court's instruction to the jury, but a malfunction of the court's recording device rendered that portion of the proceedings inaudible, and his request was never included in the record. For

this and other reasons, Defendant filed a Verified Motion to Supplement the Record of Proceedings. As part of this motion, Defendant submitted a proposed statement of the evidence, based on counsel's recollection of the proceedings. After hearing arguments from counsel, the trial court rejected this statement, finding that "less than one second of said tape is inaudible" and that "during the 'inaudible' portion of said tape, it was not possible that counsel made the remark which he alleges and proposes as his statement of the evidence." (First Supplemental Record of Proceedings at 1).

hancing a sentence, a trial court must state its specific reasons for doing so. Accordingly, the sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating or mitigating; and, (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances. *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1087 (Ind.1996)). Defendant contends that the trial court improperly failed to find any mitigating circumstances and erroneously found two aggravating circumstances to exist.

## A

Defendant cites the failure of the trial court to find any mitigating circumstances as evidence that his sentence is manifestly unreasonable. Specifically, Defendant argues that (1) the record "clearly establishes" that he came to the aid of the victim and that this attempt constitutes a mitigating factor, and (2) the fact that the trial court determined that his incriminating statement was given voluntarily constitutes a mitigating factor. We disagree. In *Jones v. State,* 675 N.E.2d 1084, 1088 (Ind.1996), this Court said that "[a] failure to find mitigating circumstances that were clearly supported by the record may imply that they were overlooked and not properly considered." However, we were careful to note that "[a]lthough a court must consider all evidence of mitigating factors offered by a defendant, the finding of a mitigating factor rests within the trial court's discretion." *Id.*

Of the two mitigating factors Defendant presents, we find that the record does not support the first. Although John Runner testified that Defendant initially attempted to intervene in the beating of the victim that preceded the shooting, he later acknowledged that Defendant himself "threw a couple of punches." In this regard, Defendant's claim of aiding the victim is not as "clearly established" as he asserts. Moreover, although it is true that the trial court found that Defendant's incriminating statement was voluntarily given, it was tendered only after several prior inconsistent statements and the presentation of other incriminating evidence to Defendant. Under these circumstances, we find no error in the trial court's rejection Defendant's statement as a mitigating factor.

## B

Defendant next challenges the aggravating factors used by the trial court to enhance his sentence: (1) Defendant's criminal history, and (2) the nature of the offense. In particular Defendant argues that his criminal history, taken as a whole, is not so significant as to merit consideration by the trial court as a "major" aggravating factor. (Appellant's Amended Appeal Br. at 25). In addition, Defendant argues that in finding the nature of the offense to be an aggravating factor, the trial court erroneously used material elements of the offense itself to justify the enhancement. We disagree on both counts.

First, we note that as provided in Indiana Code § 35–38–1–7.1, the trial court has discretion to consider numerous aggravating circumstances in enhancing sentences and that the list of factors provided by the Code is not exclusive. Ind.Code § 35–38–1–7.1(a) through (d). Here the court found two aggravating circumstances and we find that they were properly employed.

Ind.Code § 38–38–1–7.1(b)(2) provides that a person's history of criminal or delinquent activity may be used to support the finding of an aggravating circumstance to enhance a sentence. Contrary to Defendant's suggestion, there is no requirement that this criminal history be necessarily violent. The trial court supported the finding of this aggravator by specifically identifying past incidences of criminal conduct by Defendant. Those incidences included convictions for Resisting Law Enforcement, a class D felony, and other misdemeanor offenses.

Ind.Code § 35–38–1–7.1(a)(2) provides that the nature and circumstances of a crime shall be considered in determining what sentence to impose. While a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, the court may look to the

particularized circumstances of the criminal act. *Smith,* 675 N.E.2d at 698; *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind., 1994); *Williams v. State,* 619 N.E.2d 569, 573 (Ind. 1993). To enhance a sentence in this manner, the trial court must specify why the Defendant deserves an enhanced sentence under the particular circumstances. *Wethington v. State,* 560 N.E.2d 496, 509 (Ind. 1990). In considering the circumstances surrounding the crime the trial court noted:

> Defendant clearly took the victim, assisted in participating and beating him senseless, put him in the trunk of the car, drove around town, to look for a basement, set him in a chair and executed him for absolutely no reason. Not that there is ever a reason for any of this kind of violence, but there is not even the appearance of reason here, [Defendant] just simply killed him.

(R. at 518). We find that the trial court adequately supported the finding of this aggravating circumstance. Further, we find that the trial court properly balanced the aggravating and mitigating circumstances in its enhancement of Defendant's sentence.

## VI

Finally, Defendant contends that the trial sentenced him under the incorrect sentencing statute. We agree.

In *Smith v. State,* 675 N.E.2d 693 (Ind. 1996), we concluded that P.L. 158–1994, which provides a presumptive 40–year sentence for murder subject to a 20–year enhancement, rather than P.L. 164–1994, which provides a presumptive 50–year sentence for murder subject to a 10–year enhancement, governs murders committed between July 1, 1994 and May 5, 1995. *See Jones v. State,* 675 N.E.2d 1084, 1086 (Ind.1996). Here, the jury convicted Defendant for a murder occurring on March 31, 1995. Because the record suggests that the trial court used P.L. 164–1994 in this case,[6] we remand for re-sentencing.

### Conclusion

The trial court was correct in its sentencing of Defendant in all respects except for the use of a fifty-year presumptive sentence.

Accordingly, we affirm the conviction and remand to the trial court for re-sentencing pursuant to P.L. 158–1994.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

6. See Appellant's Verified Motion to Supplement the Record of Proceedings.