## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David A. Smith
McIntyre & Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathan K. Baker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 28, 2019

Court of Appeals Case No.
18A-CR-2744

Appeal from the Martin Circuit Court

The Honorable Lynne E. Ellis, Judge

Trial Court Cause No.
51C01-1509-MR-140

**Najam, Judge.**

# Statement of the Case

Nathan K. Baker appeals his convictions and 133-year aggregate sentence for two counts of murder; two counts of burglary, as Level 4 felonies; and one count of auto theft, as a Level 6 felony. Baker raises three issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion when it concluded that Baker's statements to police officers while in their custody were made voluntarily.

2. Whether the trial court abused its discretion in sentencing Baker when it declined to find Baker's purported intellectual disability to be a mitigating circumstance.

3. Whether Baker's 133-year sentence is unconstitutionally disproportionate under Article 1, Section 16 of the Indiana Constitution.

We affirm.

# Facts and Procedural History

On August 25, 2015, Martin County Sheriff James Travis Roush spoke to Allan Sims and Tom Tharp at Sims' residence. Sheriff Roush "was looking for Nathan K. Baker regarding an unrelated auto theft report." Appellant's App. Vol. 2 at 36. Sims allowed Sheriff Roush to "check . . . on his property for any signs of" Baker. *Id.* Sheriff Roush did so but did not see any evidence of Baker's presence, and he left.

[4] However, Baker was in a wooded area near the men and overheard their conversation. Baker believed that Sims and Tharp had accused Baker of breaking into a nearby residence to Sheriff Roush. After he observed Sheriff Roush leave the premises, Baker broke into Sims' residence and obtained a shotgun. Baker then confronted Sims by Sims' garage and shot Sims "in the head area" with the shotgun, killing him. Appellant's App. Vol. 2 at 36. A very loud air compressor was running nearby at the moment, and Tharp did not hear the shotgun blast because of it. Baker then confronted Tharp in a garden at the residence and shot Tharp multiple times, killing him as well.

[5] After he murdered Sims, Baker dragged Sims' body into the garage, pulled down the garage door, and padlocked a side door from the outside. After he murdered Tharp, he dragged Tharp's body into the garden and covered the body with some beans and vegetation. Baker then stole Tharp's vehicle from Sims' residence and went to Tharp's residence, broke into Tharp's residence, and stole another shotgun. Baker later sold the shotgun he had used to murder Sims and Tharp to Doug May.

[6] Tharp's family reported him missing the next morning, on August 26, and Martin County law enforcement officers proceeded to Sims' residence to try to locate him. There, they observed Sims' body in the garage. They then contacted the Indiana State Police to open an investigation into an apparent homicide. A few hours later, officers discovered Tharp's body in the garden.

[7] Later that day, Lawrence County law enforcement officers "spotted [Baker] driving a vehicle . . . that . . . belonged to Tom Tharp." *Id.* Those officers attempted to initiate a traffic stop, but Baker fled. Baker crashed the vehicle, and officers were able to take him into custody. Baker had a shotgun in the vehicle.

[8] Indiana State Police officers took custody of Baker and advised him of his *Miranda* rights both orally and in writing. After waiving those rights, Baker, over two different interrogations, admitted to killing Sims and Tharp; to attempting to hide Sims' body in the garage and Tharp's body in the garden; to stealing Tharp's vehicle; to breaking into both of the victims' residences and stealing shotguns from them; and to selling the murder weapon to May. Based on Baker's confession, officers later recovered that weapon from May.

[9] The State charged Baker with numerous offenses. Baker thereafter requested a competency hearing. The court appointed Dr. Michael Cantwell and Dr. Heather Henderson-Galligan to review Baker's competency. Dr. Cantwell found Baker "competent to stand trial."[1] Tr. Vol. 2 at 48. However, Dr. Henderson-Galligan concluded that Baker had an IQ of 70 and was not competent, stating as follows:

> Mr. Baker is not a mentally or cognitively intact individual. Although he is able to articulate his current charges and has cursory awareness of the legal system process, he does not

---

[1] Dr. Cantwell's report is not in the record on appeal, and he did not testify before the court.

demonstrate an understanding of the legal system as a whole. He was able to demonstrate examples of right from wrong, when a scenario was provided by this examiner. Based on historical psychological data, including childhood school records leading to Social Security benefits, and this recent psychological testing, this expert opines, Mr. Baker does indeed have an intellectual disability rendering him cognitively unsound. Mr. Baker is not able to participate in his own defense and is clearly incompetent to stand trial.

Appellant's App. Vol. 3 at 7.

[10] Thereafter, Baker was additionally evaluated by Dr. Megan Shaal. Dr. Shaal reviewed Baker's medical, social, educational, employment, and legal histories and the evaluations by Dr. Cantwell and Dr. Henderson-Galligan. Dr. Shaal also administered an IQ test for Baker, which placed him "within the Average range of intellectual functioning." *Id.* at 15. She further assessed that "[h]is mental status examination revealed a score indicating no presence of cognitive impairment." *Id.* Her review of his educational history stated that, at a young age, Baker was "noted to be capable of making good grades but to not take responsibility for his schoolwork and to have a poor attitude towards school." *Id.* at 14. Dr. Shaal concluded that Baker "understands the nature and objectives of his legal proceedings," that he "presents with the ability to assist his attorney in his defense," and that he "is competent to stand trial." *Id.* at 19-20. Following a hearing, the court determined Baker competent to stand trial.

[11] Largely based on Dr. Henderson-Galligan's assessment, Baker moved to suppress his confession on the ground that he could not have voluntarily made

the statements he had made to investigating officers while he was in their custody. The trial court rejected that argument after an evidentiary hearing. In particular, explicitly relying on "the totality of the circumstances" and Dr. Shaal's evaluation, the court stated as follows:

> I do not believe there was police coercion. I do not believe the length of the interrogation and the location of the interrogation would lead to an involuntary statement. The continuity of the interrogation I do not believe that that would le[a]d to the involuntariness of the statement.

> The Defendant's maturity is an issue. The Defendant's education is a[n] issue. And the Defendant's physical condition is not a[n] issue for me as to voluntariness. The Defendant's mental health is a[n] issue. Whether the Defendant was intoxicated is not a[n] issue. That was proven that he had no medication or [il]licit drugs in his system. Whether a defendant was sleep deprived, that's not an issue. And whether the police deceived the Defendant is not a[n] issue. So I'm looking at Defendant's maturity, Defendant's education, and Defendant's mental health.

> Now, as it relates to the Defendant's maturity, Mr. Baker was in his 30[s]. I reviewed and watched [his recorded interrogations] and I've . . . had Mr. Baker in front of me since 2015. He has never made any indication personally, on the tape, that he has an immaturity about him that would make his confession involuntary. In looking . . . [at] the school records, medical records, testimony of the doctors[,] . . . he didn't finish school. He had issues with reading and comprehension. And yet there was testimony by Dr. Shaal about his ability to survive in the woods. And he had enough intelligence . . . to make it feasible that he could take care of himself even in difficult situations. So, I believe he had a particular maturity about him to know how to

take care of himself and what was right and wrong as it relates to imposing upon others for his needs.

Intellectually—first of all, I want it known right now that I . . . understand that his [IQ] is at a 70 unmedicated. The Defense used the term "he is a point above mental retardation." That's why we have the cutoff. He's not considered mentally retarded . . . . So, I do not believe he is so low functioning that he doesn't understand and did not understand the totality of the circumstances where he sat the day of the interrogation and what was going on.

There is no issue as to the *Miranda* advisements. . . . [O]ne thing that I'll note . . . —did he ask it more than on[ce]? "What am I being charged with?" He was very concerned about what he was being charged with. And . . . in fact, that's one of the things that stands out in his initial hearing. The State had not completed the charging information yet. He was being held. It's on videotape. When he first came before the Court, the Court wanted to make sure that . . . he ha[d] legal counsel immediately. And I read a probable cause affidavit to the Defendant, appointed legal counsel, and the State . . . asked for additional time . . . to file charges.

. . . To me, that was very telling as to his ability to understand what was going on and understand the situation and the allegations against him because he was quite concerned. He was aware enough of the allegations and had great concern as to what he was being charged with. That was telling to me.

. . . Baker was not in a psychological unit when questioning occurred. . . . He also was not on psychotropic drugs. . . .

[A]nd I understand that ADHD is on the mental health scale, but it does not rise to the level of schizoaffective behavior. . . . Then

in talking about . . . borderline feeblemindedness . . . [a]gain, I'm going back to— . . . he is . . . a point above. . . . He was not on the mental retardation scale. He was a point above. And therefore, I believe he had the ability to understand what he was doing and the severity of the situation as it relate[d] to his confession. And I believe his confession was voluntary.

Tr. Vol. 3 at 120-24.

[12] Baker renewed his objection to the admissibility of his confession at his ensuing jury trial, which the court overruled. The jury thereafter found Baker guilty as charged. The trial court entered judgment of conviction against Baker for two counts of murder, two counts of Level 4 felony burglary, and one count of Level 6 felony auto theft.

[13] Following a sentencing hearing, the court found the following mitigating and aggravating circumstances:

> The Court finds the following mitigating factors: testimony of possible remorse by Indiana State Police, and [Baker was] cooperative with [the] investigation[.]
>
> [Baker's] intellectual disability was mitigated by [the State] not filing . . . Life Without Parole.
>
> The Court finds the following aggravating factors: prior criminal history[:] 13 prior convictions, at least 5 Petitions to Revoke Probation and at least one Community Corrections Revocation; one victim was at least 65 years of age; multiple victims; one victim was a family member by marriage and provid[ed Baker] with a place to live; [Baker] had taken [a] multitude of drugs

immediately preceding [the] acts; one victim was a long[-]time
friend and neither victim provoked [Baker].

Appellant's App. Vol. 2 at 26. The court then sentenced Baker to an aggregate term of 133 years in the Department of Correction, the entirety of which is to be executed. This appeal ensued.

# Discussion and Decision

## Issue One: Admissibility of Confession

On appeal, Baker first asserts that the trial court abused its discretion under Article 1, Section 14 of the Indiana Constitution when it permitted the State to introduce Baker's confession at his jury trial.[2] "The decision whether to admit a defendant's custodial statement is within the discretion of the trial court." *Ellis v. State*, 707 N.E.2d 797, 801 (Ind. 1999). "In making a determination as to the voluntariness of a statement, the trial court must consider the totality of the circumstances." *Id.* "[W]e do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness." *Id.*

Baker asserts on appeal that, under Article 1, Section 14, the absence of police coercion here is not dispositive on the issue of the voluntariness, or not, of his statements to police and that Baker's purported "mental disease or defect" alone can render his statements involuntarily made. Appellant's Br. at 30. He

---

[2] Baker's argument on appeal regarding the admissibility of his confession is limited to the Indiana Constitution and is not raised under the federal constitution. *See* Appellant's Br. at 25-30.

further asserts that the trial court's ruling "was contrary to the vast weight of the evidence . . . regarding Baker's intellectual disabilit[y]." *Id.* And he asserts that the trial court unduly emphasized his IQ and failed to apply the totality-of-the-circumstances test.

[16] We reject Baker's arguments. First, the trial court explicitly reviewed the totality of the circumstances, considering no fewer than eleven different factors in determining the voluntariness of Baker's statements. Tr. Vol. 3 at 120-24. That the court thought Baker's IQ deserved some commentary that other factors did not deserve does not demonstrate that the court unduly emphasized that factor or that the court applied the wrong test. Baker's argument on those two points fail to place the court's comments in their proper and explicit context.

[17] Second, accepting for the sake of argument Baker's position that his purported mental deficiency alone might establish involuntariness under Article 1, Section 14, Baker's argument on this issue merely requests this Court to reweigh the evidence that was before the trial court. Specifically, he asks that we give more weight to Dr. Henderson-Galligan's opinion and to selected portions of Dr. Shaal's evaluation than the trial court gave them. He likewise asks that we simply disregard the portions of Dr. Shaal's evaluation and conclusions that were not favorable to him. We cannot reweigh the evidence. Dr. Shaal's conclusions and the court's own impressions of Baker based upon several encounters with him support the trial court's judgment on this issue. *See Wilkes v. State*, 917 N.E.2d 675, 681 (Ind. 2009) (noting that it may be appropriate for

the trial court to assess the defendant's demeanor in determining the voluntariness of his prior statements). Accordingly, we affirm the trial court's admission of Baker's confession.

## *Issue Two: Abuse of Sentencing Discretion*

[18] Baker next asserts that the trial court abused its discretion when it sentenced him because the court, in Baker's words, "refused to find Baker's intellectual disability as a mitigating circumstance." Appellant's Br. at 36. Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.), *clarified on reh'g*, 875 N.E.2d 218 (2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotations and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493.

[19] In its sentencing order, the trial court stated that it had declined to find Baker's intellectual disability to be a mitigating circumstance because the State had already extended him a benefit for that circumstance by not seeking life without

parole. Baker asserts on appeal that the State's decision is neither here nor there with respect to the sentencing hearing and the evidence of his disability.

[20] Despite the parties' arguments on appeal, we need not decide whether the State's decision not to seek life without parole mattered at all to this issue. Baker has not met his burden to show that this purported mitigating factor "is both significant and clearly supported by the record." *Id.* Again, Dr. Shaal's evaluation and conclusion that Baker did not suffer an intellectual disability, which is ample evidence that it is neither significant nor clearly supported, and Baker's assertions on appeal simply disregard that evidence and seek to have this Court do the same, which we cannot do. We cannot say that the trial court abused its discretion when it declined to find Baker's purported intellectual disability to be a mitigating circumstance.

### Issue Three: Constitutionality of Baker's Sentence

[21] Lastly, Baker asserts that his 133-year aggregate sentence is unconstitutionally disproportionate under Article 1, Section 16 of the Indiana Constitution given his purported intellectual disability.[3] As our Supreme Court has explained:

> Though Article 1, Section 16 sweeps somewhat more broadly than the Eighth Amendment, its protections are still narrow. It is violated only when the criminal penalty is not graduated and proportioned to the nature of the offense. Though we cannot set

---

[3] Although Baker cites some federal authority in this part of his brief, he expressly limits his analysis to Article 1, Section 16 of the Indiana Constitution and does not premise his argument on the Eighth Amendment to the United States Constitution.

aside a legislatively sanctioned penalty merely because it seems too severe, Article 1, Section 16 requires us to review whether a sentence is not only within statutory parameters, but also constitutional as applied to the particular defendant. Our standard for an as-applied proportionality challenge depends on the type of penalty at issue. For . . . penalties not based on prior offenses, we have undertaken a simpler inquiry into whether the penalty is graduated and proportioned to the nature of the offense.

*Knapp v. State*, 9 N.E.3d 1274, 1289-90 (Ind. 2014) (alteration, citations, and quotation marks omitted).

[22] Baker's argument on appeal, in essence, is that the State conceded that life without parole would be an inappropriate sentence due to his intellectual disability, yet, in effect, that is what he received. We reject Baker's argument. The trial court was not prohibited from sentencing Baker to a term of years due to the State's decision not to seek life without parole. And, again, the evidence most favorable to the trial court's judgment does not demonstrate a significant and clearly supported intellectual disability in the first instance.

[23] Baker has not met his burden on appeal to show that his sentence—133 years for two murders, two Level 4 felony burglaries, and one Level 6 felony auto theft—is unconstitutionally disproportionate under Article 1, Section 16. And he makes no argument on appeal that his sentence is inappropriate under Indiana Appellate Rule 7(B). Accordingly, we affirm his sentence.

# Conclusion

[24] In sum, we affirm Baker's convictions and sentence.

[25] Affirmed.

Bailey, J., and May, J., concur.