Jerred KAHLENBECK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–9808–CR–435.

Supreme Court of Indiana.

Nov. 19, 1999.

Neil L. Weisman, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Jerred Kahlenbeck was convicted of murder and four counts of attempted murder in connection with a series of shootings that took place in February of 1997 on the west side of South Bend. He contends that the trial court committed reversible error in denying his motion to sever the counts, his motion to suppress his statement to police and his motion to correct error based on newly discovered evidence. We affirm the trial court.

**Factual and Procedural Background**

Between February 12 and 26, 1997, five people were shot on the west side of South Bend, one fatally. All of the victims were African–American. Each of the survivors told police that he had been shot by white males traveling together. Two of the victims described the shooters' vehicle as a noisy, dark-colored jeep with a tan top. Other victims reported a small gray car. On February 26, detectives investigating the shootings were following a jeep that matched the description given by some of the victims when they received a radio report of another shooting in the area involving a jeep. The officers stopped the jeep and took the occupants, Kahlenbeck, Lief O'Connell and Bret Southers, into custody. They also recovered a handgun belonging to O'Connell from the area where the jeep was pulled over. O'Connell had purchased the gun a few weeks before the shootings began.

In a videotaped statement, Kahlenbeck told police that he was involved in the shootings of the African–American victims and that the shootings were O'Connell's idea to seek revenge for the death of his girlfriend who had been killed in a robbery attempt by an African–American. He stated that they had done this on four separate nights and on one night had shot at more than one person. He stated that sometimes he drove and O'Connell was the shooter and on other nights O'Connell drove and he wielded the gun. He also told police that on some of these occasions they had driven his mother's gray Corsica.

Kahlenbeck was charged with one count of murder and five counts of attempted murder, one of which was dismissed during the trial. A jury convicted Kahlenbeck on all remaining counts and the trial court sentenced him to concurrent terms of fifty-five years imprisonment for the murder and thirty years for each attempted murder. Kahlenbeck filed a motion to correct error based on newly discovered evidence. The trial court denied that motion, and this appeal ensued.

**I. Severance**

Kahlenbeck argues that the trial court erred in denying his motion to sever the six counts of the information. Offenses may be joined in a trial when the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35–34–1–9(a) (1998).

Kahlenbeck argues that he was entitled to a severance as a matter of right, and that even if no right to sever existed, the trial court abused its discretion in refusing a severance. Indiana Code § 35–34–1–11(a) provides defendants with the right to severance where "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character...." As the statute explicitly states, severance is required as a matter of right under this provision only if the sole ground for joining is that the offenses are of the same or similar character. See Ben–Yisrayl v. State, 690 N.E.2d 1141, 1145 (Ind.1997). Although Kahlenbeck argues that the offenses were joined because they were of the same character, in light of his statement that he and O'Connell had targeted African–Americans in supposed acts of revenge for O'Connell's girlfriend's death, it is clear that the offenses were based on "a series of acts ... constituting part of a single scheme or plan." Accordingly, Kahlenbeck had no

right to severance under Indiana Code § 35–34–1–11(a).

■■■ If severance is not a matter of right, Indiana Code § 35–34–1–11(a) provides that:

the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

A trial court's refusal to sever charges that may be joined under Indiana Code § 35–34–1–9(a)(2) is reviewed for an abuse of discretion. *See Ben–Yisrayl*, 690 N.E.2d at 1146; *Baird v. State*, 604 N.E.2d 1170, 1184 (Ind.1992). Kahlenbeck argues that even if the counts were based on a "series of acts constituting part of a single scheme or plan," the trial court abused its discretion because the "complexity of the evidence prevented the jury from distinguishing the evidence and applying the law intelligently to each separate count." In this case six counts were charged and the evidence consisted of the testimony of surviving victims, ballistics evidence and Kahlenbeck's statement, none of which can be considered "complex." Finally, Kahlenbeck does not point to any evidence in support of the third consideration, that the jury would be unable to "distinguish the evidence and apply the law." The trial court did not abuse its discretion in denying Kahlenbeck's motion to sever. *See id.*

## II. Kahlenbeck's Statement to Police

■■■ Kahlenbeck argues that the trial court erred in denying his pretrial motion to suppress his statement to police and in overruling his objection to the statement's admission at trial. Kahlenbeck contends that his statement was obtained through psychological coercion and threats of violence, was given while he was intoxicated, was given in response to police deception, and was involuntary, all in contravention of his constitutional rights not to incriminate himself protected by the federal and state constitutions. Kahlenbeck does not contend that there is any difference between the two constitutional rights for these purposes.[1]

■■■ The decision to admit Kahlenbeck's statement is a matter of discretion of the trial court after considering the totality of the circumstances. *See Ellis v. State*, 707 N.E.2d 797, 801 (Ind.1999). "When reviewing a challenge to the trial court's decision, we examine the record for substantial, probative evidence of voluntariness; we do not reweigh the evidence." *Horan v. State*, 682 N.E.2d 502, 510 (Ind. 1997).

■■■ As evidence of coercion and threats by police Kahlenbeck points to the demand of one officer that Kahlenbeck "start telling [him] the truth before I start losing patience" and the officer's statement that "I'm fitting to lose my mind here on this guy and I don't want to. I want to be a nice guy." He also cites the fact that the officer kicked or hit the chair the officer had been sitting on, startling Kahlenbeck. Kahlenbeck's taped statement was given after an officer read Kahlenbeck his rights and after Kahlenbeck signed a waiver form. At the time Kahlenbeck gave his taped interview, which lasted less than one hour, he had been in custody for about an hour. The trial court's determination that Kahlenbeck's statement should be admit-

---

1. This Court has recently held that the two constitutions require similar considerations in determining whether a waiver of the right was knowing, intelligent and voluntary, *see Ajabu v. State*, 693 N.E.2d 921, 931–34 (Ind. 1998).

ted is supported by substantial evidence and is consistent with precedent.

■ Statements by police expressing a desire that a suspect cooperate and explaining the crimes and penalties that are possible results are not specific enough to constitute either promises or threats. *See Massey v. State*, 473 N.E.2d 146, 148 (Ind. 1985). As in *Massey*, Kahlenbeck "was not subjected to any lengthy interrogations and there is no evidence of any physical abuse or coercive action by the police which logically would have misled defendant or overborne his will in regard to his voluntary statement." *Id.; accord Roell v. State*, 438 N.E.2d 298, 300 (Ind.1982) (confession was admissible where officers did not threaten or mislead defendant). Moreover, this Court has upheld the admission of confessions made during the police's use of the "good cop, bad cop" interview technique. *See, e.g., Houser v. State*, 678 N.E.2d 95, 102 (Ind.1997). Finally, there is no evidence that Kahlenbeck's age of twenty-one and inexperience with police officers rendered his confession involuntary. *Cf, Carter v. State*, 686 N.E.2d 1254, 1259–60 (Ind.1997) (upholding admission of fourteen-year-old defendant's confession).

■ Kahlenbeck's intoxication will make his statement incompetent only if it rendered him "not conscious of what he [was] doing" or produced a "state of mania." *Ellis*, 707 N.E.2d at 802. Intoxication to a lesser degree goes only to the weight to be given to the statement and not its admissibility. *Id.* At the hearing on his motion to suppress, Kahlenbeck offered the testimony of his siblings who, after viewing the videotape of the statement, stated that Kahlenbeck was under the influence of drugs or alcohol, was more talkative than normal and seemed confused and nervous. He also presented the testimony of an expert that marijuana caused a "pliability of mind" that makes a person more agreeable to what others say. The expert testified that Kahlenbeck was "spacey."

The State responded with the testimony of a South Bend police officer that, at the time he was arrested, Kahlenbeck was able to follow instructions and perform physical requests including walking backward with his hands on his head and kneeling down. The officer also testified that he did not smell alcohol on Kahlenbeck's breath. Another officer testified that Kahlenbeck was alert during his interview and did not slur his words. Finally, the State's expert testified that on the videotaped statement Kahlenbeck was able to balance himself, speak clearly, recall detailed events, give directions to a specific location, and think clearly. In sum, although Kahlenbeck was drinking and smoking marijuana in the hours before his statement to police, the trial court's conclusion that Kahlenbeck was not so impaired that he was "not conscious of what he [was] doing" is supported by substantial probative evidence and presents no basis for reversal.

■ Kahlenbeck further argues that police deception contributed to making his confession involuntary. The police told Kahlenbeck that they had ballistics, fingerprints, and eyewitness identifications in addition to O'Connell's and Southers' versions of the murder and attempted murders. The State apparently concedes that some or all of the claims were false, at least at the time of the interview. As this Court recently noted, "[P]olice deception does not vitiate a *Miranda* waiver and render a confession inadmissible, but is rather one consideration that must be viewed in determining the 'totality of circumstances.'" *Willey v. State*, 712 N.E.2d 434, 441 (Ind.1999) (quoting *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)). In *Carter v. State*, the defendant argued that his confession was involuntary due to police deception and his intoxication. *See* 490 N.E.2d 288, 290–91 (Ind.1986). This Court held the confession properly admitted where the defendant "had been fully advised of his *Miranda* rights, indicated his understand-

ing of them, was a mature individual of normal intelligence, and was not interrogated for any inordinate amount of time." *Id.* at 291. The same is true here. We find no abuse of discretion in the admission of Kahlenbeck's confession.

### III. Motion to Correct Error

 Kahlenbeck argues that the trial court erred by denying his motion to correct error based on newly discovered evidence. Kahlenbeck offered the affidavit of his sister, Rochelle Kahlenbeck, that reported her conversation with the parents and brother of O'Connell's deceased girlfriend, Annie Fulford. Rochelle's affidavit stated that Annie's father admitted to being the "mastermind" of the shootings and that Annie's brother stated that their brother Michael was involved in the shootings but that police had never suspected him. The State offered affidavits of the father and brother denying that they made these statements and the workplace time record of Michael Fulford as an alibi.

 To obtain a new trial based on newly discovered evidence, a defendant must show that (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *Allen v. State,* 716 N.E.2d 449, 456 (Ind.1999); *Reed v. State,* 702 N.E.2d 685, 691 (Ind.1998). We review the trial court's denial of Kahlenbeck's motion for an abuse of discretion. *See Allen,* 716 N.E.2d at 456; *Webster v. State,* 699 N.E.2d 266, 269 (Ind.1998).

 In determining whether new evidence would produce a different result in a new trial, the trial court may consider the weight that a reasonable jury would give it and may evaluate the probable impact the evidence would have in a new trial

considering the facts and circumstances shown at the first trial. *Nunn v. State,* 601 N.E.2d 334, 337 (Ind.1992). Although it is generally the duty of the jury to determine the credibility of the witnesses, on a motion for a new trial based on newly discovered evidence, "the trial court must assess the credibility of any proffered new evidence." *Allen,* 716 N.E.2d at 456. The trial court was within its discretion in concluding that Rochelle's affidavit, which itself reported only hearsay and was apparently inadmissible, would not produce a different result at a new trial. In addition to being hearsay, the affidavit contradicted Kahlenbeck's statement to police. Moreover, Annie's father and brother denied Rochelle's allegations and Michael Fulford's alibi contradicted the inference of Rochelle's statement that Michael was involved. Finally, even taking Rochelle's account as an accurate rendition of what she was told, and assuming the truth of this hearsay, although these allegations would implicate Michael, they still would not exculpate Kahlenbeck.

In light of the evidence at trial, including Kahlenbeck's statement to police, together with Michael Fulford's alibi and the affidavits of Annie's father and brother, we cannot conclude that the trial court abused its discretion in denying Kahlenbeck's motion to correct error. *See O'Connor v. State,* 529 N.E.2d 331, 333 (Ind.1988) (defendant failed to produce credible evidence that would likely produce a different result); *Nunn,* 601 N.E.2d at 337 (same).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.