Derrick Daron CLARK, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 48S00–0205–CR–270.

Supreme Court of Indiana.

May 19, 2004.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

In this direct appeal, Derrick Clark appeals his conviction of murder and sentence to life without parole. We affirm the trial court.

**Factual and Procedural Background**

Jeff Phillips lived with his fiancée, Kimberly Hester at the Courtyard Apartments in Anderson, Indiana. Between 10 and 11 p.m. on April 11, 2001, Hester reported to Phillips that two people were loitering in the parking lot near Phillips's car, and one of them was sitting on the car. Phillips went outside, and after a brief exchange one loiterer returned to a group about twenty to twenty-five feet away and the second drove off. Clark, who was among the group, then approached Phillips, and an argument broke out. After a brief exchange Phillips returned to his apartment, and Clark retrieved his hooded jacket from the woman who had been holding it and told the group to go inside the apartment building.

After Phillips had turned off most of the lights in the apartment, Phillips and Hester peeked out of their bedroom window. Phillips saw someone with a hood approach their apartment building and fire three shots into the apartment. One of the bullets struck Hester and she died a short time later. Clark was identified as the shooter by one member of the group. Two other witnesses, an adult and a nine-year-old boy, also implicated Clark in the shooting, and Clark confessed to the shooting in police interviews under circumstances set forth below.

Clark was charged with the Murder of Hester, Attempted Murder of Phillips, and handgun violations. The State requested that Clark be sentenced to life without parole based on the charge that he discharged a firearm into a residence. The jury found Clark guilty of Murder, Attempted Murder, and Carrying a Handgun

Without a License.[1] The jury recommended a sentence of life without parole, and the court imposed that sentence.

In this direct appeal, Clark contests the admission of statements he made while in custody at the police station and other statements made during an encounter with a police officer in a parking lot. He also contests the admission of a witness's statement, arguing that the witness was incapable of making a statement at the time he made it, and that the admission of the witness's statement violated his constitutional Right to Confrontation. Finally, Clark challenges the sentence as inappropriate, based on an improper consideration of aggravating and mitigating circumstances, and based on an unconstitutional statute.

## I. Witness' Statement

The State called Michael Watson as a witness. Before Clark was arrested, Watson had been interviewed under oath by the prosecutor about the events of the night of the shooting. In this interview, Watson testified that he was at the Courtyard apartments with Clark and others when Clark got into an argument with Phillips and told everyone to go inside. Shortly after that, Watson heard shots. At trial, when asked about these facts, Watson asserted that he did not remember being at the scene and did not recall whether anyone else was there. The State then asked Watson to read the transcript from his interview, and Watson testified that nothing in it was true. The prosecutor then asked Watson if specific statements in his interview were lies, and Watson said they were. The prosecutor said, "And you're telling this jury under oath here today that everything in here that you've said about Derrick Clark was a lie?"

Clark unsuccessfully objected to this line of questioning as an effort to get Watson's prior statements before the jury as impeachment without Watson's having made any inconsistent statements.

The State then offered the transcript of Watson's statement into evidence and the court admitted it. Clark argues that Watson's statement was improperly admitted because, at trial, Watson claimed he was under the influence of medication at the time of the statement and denied having knowledge of the facts presented in the statement at the time he made it. The trial court ruled the transcript admissible under Evidence Rule 803(5), which provides:

> (5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The State concedes the statement was not properly admitted as an exhibit pursuant to Rule 803(5) because the Rule permits it to be read to the jury, but not admitted as an exhibit. However, the State points out that an appellate court may affirm a trial court's judgment on any theory supported by the evidence. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind.2002) (citation omitted). The State argues that Watson's statement was nevertheless ad-

---

1. Clark was also charged with Carrying a Handgun Without a License with a prior handgun conviction. He waived his right to a jury trial on that charge and the court found him guilty after the jury returned its verdict.

missible under Evidence Rule 801(d)(1)(A) as substantive evidence as a prior inconsistent statement made under oath. That Rule provides:

> A statement is not hearsay if: ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition.

■ In order for a prior inconsistent statement to be admissible under this Rule: "(1) the statement must have been given under oath subject to penalty for perjury at a trial or other proceeding and (2) the declarant who made the prior statement must both testify and be subject to cross-examination concerning the statement at the trial where the statement is sought to be introduced." *See United States v. DiCaro*, 772 F.2d 1314, 1321 (7th Cir.1985). Here, Watson's statement sat-

isfied both requirements. It was given under oath subject to penalties for perjury in the course of the prosecutor's investigation of the case. If a declarant has not been cross-examined, his availability for recall for cross-examination satisfies the requirement that he be available for cross-examination. *Kielblock v. State*, 627 N.E.2d 816, 821 (Ind.Ct.App.1994). Clark thus had the opportunity to cross-examine Watson at trial even though he chose not to use it.

■ Clark also argues that admission of Watson's prior statement violated his right to confront witnesses under both the state and federal constitutions. For the same reason, this contention is unavailing. The federal right of confrontation has not been denied when the witness is available for cross-examination. *United States v. Valdez–Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994).[2] Under the Indiana constitution, although the accused must have an opportunity to cross-examine the witness during the face-to-face confrontation, the "oppor-

---

**2.** The very recent decision of the United States Supreme Court in *Crawford v. Washington*, — U.S. —, 124 S.Ct. 1354, — L.Ed.2d — (2004), does not affect this case because Watson testified at trial. The Supreme Court may have called into question settled evidentiary rulings on a number of related issues. Certainly it made clear that rules of evidence do not trump the Confrontation Clause. However, the Court expressly noted that, "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). *Crawford* addressed the admission of prior statements to police by a witness who was unavailable at trial and held that admission of her statements as declarations against penal interest violated the Confrontation Clause. The state supreme court had held the statements admissible even though she was never available for cross-examination, reason-

ing that the statement "bore guarantees of trustworthiness." The United States Supreme Court held that the right to cross-examine either at the time the statement is made or at trial is required and its admission violates the defendant's right to confront witnesses if the witness is not available for cross-examination. After conducting a thorough examination of the history of Confrontation Clause jurisprudence, the Court explained, "[o]ur cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 124 S.Ct. at 1369. The Court specifically noted that its holding does not alter the rule that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. n. 9 (citing *Green*, 399 U.S. at 162, 90 S.Ct. 1930).

tunity does not have to be seized or successful and the right can be waived." *Pierce v. State,* 677 N.E.2d 39, 50 (Ind. 1997) (citation omitted). Clark argues that because Watson's statement was admitted after Watson left the stand, Clark had no opportunity to cross-examine Watson, but he gives no reason why he could not have recalled Watson. He has not established a violation of his right to cross-examine.

## II. Statements to Police While in Custody

Seven days after the shooting, Anderson police executed a warrant for the limited purpose of taking Clark's photographs and fingerprints. After Clark was brought to the police station, Detective Randy Tracy interrogated Clark and ultimately Clark confessed to the shooting. Clark argues that his *Miranda* rights were violated because Tracy ignored his request to end the questioning. He also contends that his confession was not voluntary, and that the custodial interrogation was improper because police did not have probable cause to arrest him and the interrogation exceeded the scope of the limited warrant used to bring Clark into custody.

 Review of a trial court's denial of a motion to suppress is similar to other sufficiency matters. *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

### A. *Requests to End Questioning*

 Clark first argues that the statements made in police custody should have been excluded because they were taken in violation of his *Miranda* rights after four requests that the interview end. Clark

argues each of the following statements constituted an assertion of his right to remain silent:

"This is crazy. Y'all might as well send me across the street (referring to jail)."

"Please, man, you might as well take me across the street."

"You already tryin' to charge me with this. So leave me alone and take me over here."

When the officer agreed to take Clark to jail, he said to Clark, "Okay. That's what we'll do. We're going to end the tape. Anything else you want to say?" and Clark responded "No."

 An assertion of *Miranda* rights must be clear and unequivocal, and in determining whether a person has asserted his or her rights, the defendant's statements are considered as a whole. *Simmons v. Bowersox,* 235 F.3d 1124, 1131 (8th Cir.2001). A person must do more than express reluctance to talk to invoke his right to remain silent. *Taylor v. State,* 689 N.E.2d 699, 705 (Ind.1997). A statement that "I'm through with this," followed by continued dialogue without pausing or indicating that the defendant would no longer respond, did not unambiguously assert the right to remain silent. *Haviland v. State,* 677 N.E.2d 509, 514 (Ind. 1997). Clark's statements here did not expressly invoke his right to remain silent, or request an attorney. As in *Haviland,* Clark continued to speak after making these statements, and after being advised that he was not required to continue with the interview. The trial court's conclusion that Clark did not invoke his *Miranda* rights is supported by the record.

### B. *Involuntariness of Confession*

 Clark next argues that his confession made while in police custody was not given voluntarily and therefore

was inadmissible because it was taken in violation of the Indiana and United States constitutions. Under the United States Constitution, the State must prove by a preponderance of the evidence that the defendant's confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The State's burden under the Indiana Constitution is to show voluntariness beyond a reasonable doubt. *Miller,* 770 N.E.2d at 767 (citing *Schmitt v. State,* 730 N.E.2d 147, 148 (Ind. 2000)). On appeal, the trial court's determination is reviewed in the same way as other sufficiency matters. *Griffith v. State,* 788 N.E.2d 835, 842 (Ind.2003).

■■■■ Voluntariness is determined in light of the totality of the circumstances surrounding the interrogation. *Miller v. State,* 770 N.E.2d 763, 767 (Ind.2002) (citing *Kahlenbeck v. State,* 719 N.E.2d 1213, 1216 (Ind.1999)). Relevant factors include the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant. *Id.* (citations omitted). To determine that a confession was given voluntarily, the court must conclude that inducement, threats, violence, or other improper influences did not overcome the defendant's free will. *Ellis v. State,* 707 N.E.2d 797, 801 (Ind.1999) (citations omitted).

■■■■ In this case, the record supports the trial court's conclusion that Clark's confession was voluntary. Clark points to statements by Tracy that "there's a way you can work around this", Clark would not have a future unless he was honest about what happened, he believed Clark did not intend to kill anyone, and multiple people had identified him as the shooter. Clark argues that comments like these and others constituted promises of leniency, lies, and intimidation and overcame his will because, through these statements, Tracy

conveyed to him that the only way to work out of his murder charge was to give a statement.

■■■■ A confession is inadmissible if obtained by promises of mitigation or immunity; but, vague and indefinite statements by the police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible. *Collins v. State,* 509 N.E.2d 827, 830 (Ind.1987). Further, "[s]tatements by police expressing a desire that a suspect cooperate and explaining the crimes and penalties that are possible results are not specific enough to constitute either promises or threats." *Kahlenbeck v. State,* 719 N.E.2d 1213, 1217 (Ind.1999). Here, Clark cites no specific promises. Detective Tracy explained the varying offenses of homicide and suggested that Clark would be better served by telling the truth. These statements are an attempt to induce Clark to comply with Tracy's requests, but they did not constitute promises of benefits, threats, or inducements that rendered Clark's confession involuntary.

■■■■ Clark also argues that Detective Tracy's comments constituted deceptive practices that rendered his confession involuntary. Clark argues that Tracy's statements to Clark that multiple people had identified Clark as the shooter and that Tracy believed Clark did not intend to kill were intentional falsehoods meant to elicit a statement from Clark. Assuming Clark is correct that Tracy's statements were not factual, police deception does not automatically render a confession inadmissible. Rather, it is only one factor to consider in the totality of the circumstances. *Miller,* 770 N.E.2d at 767 n. 5 (citing *Kahlenbeck v. State,* 719 N.E.2d at 1217). Further, if the police have a good faith basis for a statement, even if techni-

cally false, it does not rise to the level of deception. *See Ellis*, 707 N.E.2d at 801 (police who told defendant that they had his shoeprint at a crime scene had a good faith basis in the statement when there were footprints similar to defendant's size, but had not been conclusively established to be defendant's). In asserting that multiple people had identified Clark as the shooter, Tracy was referring to three witnesses whose information had implicated Clark in the crime. Two of these witnesses had given information about the events occurring just before the shooting, including Clark's argument with Phillips and Clark's instruction that everyone else go inside. The third statement was given by a nine-year-old boy who witnessed the shooting, but did not testify at trial and arguably expressed reluctance and confusion as to the facts. Although none of these witnesses' versions was airtight, their accounts were enough to form a good faith basis for Tracy to assert that he had witnesses to the shooting. In addition, regardless of what Tracy personally thought of Clark's intent in shooting through the window, that he believed Clark did not intentionally kill was a permissible interpretation of the facts. The trial court's conclusion that Clark's confession was voluntary is supported by the evidence.

### C. *Scope of Warrant*

■ Clark argues that his detention was illegal and therefore the statements he made in custody should not have been admitted because he was taken into custody on the basis of a warrant executed for the limited "purpose of obtaining photos, fingerprints, and palm prints," but was detained at the police station and questioned beyond the permissible scope of the warrant. The State refers to this warrant as "a so-called Davis–Mississippi warrant." The United States Supreme Court in

*Davis v. Mississippi*, 394 U.S. 721, 726–28, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), held that individuals might be detained for limited purposes, such as obtaining fingerprints, on a showing of less than probable cause. In *Baker v. State*, 449 N.E.2d 1085, 1090 (Ind.1983), this Court, citing *Davis*, concluded that warrants issued for limited purposes, such as fingerprinting or photographing, are appropriate if police act pursuant to and within the scope of such warrants.

■ The warrant supported only fingerprinting and photographing Clark, and did not justify his interrogation. The State counters that Clark's detention was nevertheless lawful because the police had probable cause to arrest Clark at the time he was taken into custody. Because the warrant was limited Clark is correct that his arrest was warrantless, and the State must establish probable cause to arrest Clark. Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *See also Henderson v. State*, 769 N.E.2d 172, 176 (Ind.2002) (citing *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind.1999)). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind.1999). It is grounded in notions of common sense, not mathematical precision. *Ogle v. State*, 698 N.E.2d 1146, 1148 (Ind. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ The State points out that at the time Clark was detained Detective Tracy knew of the statement given under oath by Michael Watson in which he reported that

Clark had argued with Phillips on the night in question, after the argument Clark instructed everyone to go inside, and Watson heard gunshots shortly after he and the others complied with Clark's directions. Tracy also had statements from other witnesses who also placed Clark at the scene and described the argument between Clark and Phillips, and reported Clark's admonition that everyone go inside. This information, in the aggregate, was enough to give Tracy probable cause to arrest Clark.

### III. Statements to Police in Parking Lot

Five days after the shooting, Officer John Branson of the Anderson Police Department, who had been investigating the shooting in question and had learned that Clark was a possible suspect encountered Clark in the parking lot of the Village Pantry and told him to remove his hands from his pockets and questioned Clark about his whereabouts at the time of the shooting. Clark told Branson that he was with his girlfriend at the time. Clark argues that although the statement was not in itself prejudicial, the State made frequent use of it to paint Clark as a liar. Clark argues that this statement was inadmissible because he was "in custody" for purposes of the Fifth Amendment to the United States Constitution and was not given *Miranda* warnings. The trial court overruled Clark's objection on the ground that Clark was not in custody. That decision is reviewed as a question of sufficiency of the evidence. *Goodner*, 714 N.E.2d at 641.

A person is in custody for purposes of *Miranda* if a reasonable person under the same circumstances would have believed that he was under arrest or not free to resist the entreaties of the police. *West v. State*, 755 N.E.2d 173, 178–79 (Ind.

2001) (citing *Joyner v. State*, 736 N.E.2d 232, 241 (Ind.2000)); *Jones v. State*, 655 N.E.2d 49, 55 (Ind.1995) (citing *Florida v. Bostick*, 501 U.S. 429, 433–34, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). This issue has often been resolved based on whether the defendant was read his *Miranda* rights or physically restrained in any way. *Torres v. State*, 673 N.E.2d 472, 474 (Ind. 1996). Also relevant is the length of the detention and the police officer's perception as to the defendant's freedom to leave. *Cooley v. State*, 682 N.E.2d 1277, 1279 (Ind.1997). Here, Clark was not physically restrained and although he was subjected to a pat-down search for weapons, the search was minimal and did not indicate that he was under arrest. The conversation between Branson and Clark was relatively short. Once Clark answered Branson's question as to his whereabouts at the time of the shooting, the questioning ended and Clark was free to go. This was not enough to render Clark in custody for purposes of *Miranda*. *See, e.g., United States v. Wyatt*, 179 F.3d 532, 536 (7th Cir.1999) (*Miranda* warnings not required when defendant, who was a suspect in a bank robbery, was asked to exit a bar with officers, subjected to a pat-down search, and questioned).

### IV. Imposition of Sentence

Clark next challenges the imposition of the sentence of life without parole, arguing that the sentence was inappropriate, the trial court failed to weigh aggravators and mitigators properly, and that the life without parole statute is facially unconstitutional. Clark was found guilty by a jury of Murder, Carrying a Handgun Without a License, and Attempted Murder. Following the presentation in the penalty phase, the jury found beyond a reasonable doubt that Clark intentionally discharged a firearm into an inhabited dwelling. The jury

recommended that Clark be sentenced to life without parole. After a sentencing hearing, on April 9, 2002, the court imposed the sentence of life without parole as recommended by the jury. The trial court cited as aggravators to the murder charge the fact that the killing was intentional and the fact that Clark discharged a firearm into an inhabited dwelling. On July 2, 2003, this Court remanded the case for resentencing because the original sentencing order did not comply with the statutory requirements for a sentence of life without parole, which is governed by the death penalty statute. Ind.Code § 35–50–2–9 (2003). An amended sentencing order was issued and that order is now under review.

In 2002, the statute was amended to require that, for sentences imposed on or after July 1, 2002, the jury is to "recommend" a sentence and the trial court is to sentence "accordingly." The original sentencing order and the amended sentencing order in this case were both issued based on the earlier statute that gave a court the discretion to impose a sentence recommended by the jury or its own sentence. Neither Clark nor the State raises any contention based on the 2002 amendments to the statute.

## A. *Inappropriateness*

An appellate court may review a sentence if it is found to be "inappropriate in light of the nature of the offense and the character of the offender." Indiana Appellate Rule 7(B). Clark argues that his sentence is inappropriate because maximum possible sentences are to be reserved for the "worst offenders." He argues that he does not fit into this category because he was nineteen years old at the time of the shooting, had no juvenile delinquency adjudications, and had only a misdemeanor handgun conviction. He points to his pastor's testimony that Clark was a respectful

person who showed remorse for his actions. He also argues that the Court should consider that there was some inference of sudden heat from his actions because, although he was convicted of murder, the jury was instructed on reckless homicide and voluntary manslaughter. In the amended sentencing order, the trial court pointed out that in addition to the finding that Clark intended to kill and intended to discharge a firearm into an inhabited dwelling, the shooting was "premeditated, calculated, and utterly without provocation." The trial court also pointed to Clark's criminal history that included probation violations and the fact that Clark failed to show remorse after the shooting. Although, as discussed in Part IV.B, there are problems in the sentencing order Clark has not established on this record that the sentence is inappropriate.

## B. *Trial Court's Consideration of Aggravating and Mitigating Circumstances*

This Court's order remanding for a new sentencing order instructed the trial court to amend its sentencing order to comply with the requirements of Indiana Code section 35–50–2–9 (2002). Because both penalties are governed by the same statute, a sentence of life without parole is held to the same standards as a death sentence. *Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998). A court sentencing under the death penalty statute may consider only the aggravating factors listed in that statute. *Bivins v. State*, 642 N.E.2d 928, 953 (Ind.1994). The trial court must also find that any aggravating factor used to determine eligibility for the sentence has been proven beyond a reasonable doubt and must find that the aggravating circumstances outweigh the mitigating circumstances and make a record of the reasons supporting the sentence. *Greer v. State*, 749 N.E.2d 545, 549 (Ind.2001). As ex-

plained in *Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind.1995) (citations omitted):

> The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime.

 The trial court's amended sentencing order did not conform to these requirements. First, the trial court cited the fact that the murder was intentional as an aggravating factor.[3] Neither intentional nor, as the trial court found, "premeditated," killing is a statutory aggravating factor under the death penalty statute. I.C. § 35–50–2–9(b). Accordingly, it was not proper for the trial court to identify that factor as relevant to the decision to impose life without parole.

 Clark further argues that the court should have considered as a mitigating circumstance that Clark had no significant criminal history as required by the life without parole statute. The finding of mitigating factors is within the trial court's discretion. *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind.1989). However, "[w]hen the trial court's sentencing statement fails to discuss or evaluate the mitigating circumstances and fails to make a finding

that mitigating factors were not present, it would be proper to remand with instructions to reconsider the sentence if significant mitigating circumstances are clearly supported by the record." *Id.* "Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Wooley v. State*, 716 N.E.2d 919, 929 n. 4 (Ind.1999). In sentencing, the trial judge expressed the view that, "any criminal history is an aggravator and the issue is the strength of that aggravation. The mitigator is that you have no criminal history." Lack of prior significant criminal history is a mitigating factor, I.C. § 35–50–2–9(c)(1), but as the trial court found, Clark had a significant criminal history. Clark's juvenile history includes runaway and incorrigibility charges. Clark has three documented parole violations, has been arrested twice for illegal handgun possession, and a deferred prosecution on the second possession had not yet expired when he committed the murder. These findings establish that the trial court carefully considered Clark's criminal background.

A second aggravating factor, which could properly establish Clark's eligibility for life without parole, was that Clark fired a handgun into an inhabited dwelling. However, in its amended sentencing order the trial court found an improper aggravating factor, and the balance of aggravators and mitigators without the improper aggravator is unknown. Accordingly, the amended sentencing order failed to meet the requirements for a sentence of life

---

**3.** Clark argues that it was improper for the trial court to find as an aggravator the fact that the killing was intentional because a material element of a crime may not be used as an aggravating factor to support an enhanced sentence. *See, e.g., Bradley v. State*, 770 N.E.2d 382, 388–89 (Ind.Ct.App.2002). The *mens rea* element of Clark's murder conviction was that he acted "knowingly or inten-

tionally." Clark argues that it was improper to cite an intentional murder as an aggravator. Because this aggravating factor was improperly applied for the reason given, we do not address the issue whether this doctrine would also invalidate the aggravator given that a "knowing" killing is sufficient for a murder conviction.

without parole. This case is again remanded for a new sentencing order that does not include the intentionality of the murder as an aggravating factor.

### C. Constitutionality of Statute

■ At the time of the original sentencing, the life without parole statute provided that, "[t]he court shall make the final determination of the sentence, after considering the jury's recommendation...." I.C. § 35–50–2–9(e) (2002). Clark argues that under the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the life without parole statute applicable at the time of his conviction is unconstitutional. *Apprendi* holds, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Ring* applied *Apprendi* to capital sentencing and requires that an aggravating circumstance supporting a capital sentence be found by the jury beyond a reasonable doubt. *Ring*, 536 U.S. at 609, 122 S.Ct. 2428. Clark proceeds from this framework to the conclusion that because the trial court could choose to reject the jury's recommendation, the sentencing statute applied was facially unconstitutional. Clark asserts that even though the trial judge in this case accepted the jury's unanimous recommendation, the fact that the statute can be applied in an unconstitutional manner renders the entire statute unconstitutional. Here, the jury found beyond a reasonable doubt the statutory aggravating circumstance that increased the penalty for murder: Clark intentionally discharged a firearm into an inhabited dwelling. This satisfies *Ring* and *Apprendi*. *Williams v. State*, 793 N.E.2d 1019, 1028 (Ind.2003) (finding *Ring* inapplicable to a death sentence where the "guilt phase verdict necessarily shows that the jury unanimously found that Williams had committed two murders, and thus, shows that the multiple-murder aggravating circumstance was proved beyond a reasonable doubt"); *Brown v. State*, 783 N.E.2d 1121, 1126 (Ind.2003) (citing *Wrinkles v. State*, 776 N.E.2d 905, 907–08 (Ind.2002)) (jury's verdict in the guilt phase, finding the defendant guilty of the two murders, necessarily means that the jury found, beyond a reasonable doubt, that Defendant had committed more than one murder).

■ Clark contends "[i]f the jury knew the law was applied in such a way as to bind the trial court, the jury might feel more solemn in its deliberations." This is not a claim that the jury was incorrectly instructed as to its role, which is an error that violates the Eighth Amendment as interpreted in *Caldwell v. Mississippi*, 472 U.S. 320, 330, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Rather, Clark's contention boils down to a claim that the pre–2002 version of the Indiana Death Penalty statute was inherently defective because the jury did not consider its determination to be binding on the judge. If the jury believed its recommendation to be binding, it might "feel more solemn in its deliberations." At the time of the jury deliberation, Indiana law provided that the recommendation was not binding, and the jury was so instructed. There was no error in the instructions, and there is no authority for the proposition that a nonbinding recommendation is inherently unconstitutional. *See Harris v. Alabama*, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (a capital sentencing statute that provides for a sentence recommendation by a jury and does not describe the weight to be given the recommendation by the

trial court judge is constitutionally permissible); *Fleenor v. Anderson,* 171 F.3d 1096, 1100 (7th Cir.1999) (it was not error for the prosecution to emphasize to the jury that its recommendation is not binding on the judge).

### Conclusion

This case is remanded for entry of a corrected sentencing order consistent with this opinion.

SHEPARD, C.J., and DICKSON, and SULLIVAN, JJ. concur.

RUCKER, J., concurs except for the majority's resolution concerning the sentence. Rather than remand this cause for a second time to cure an inadequate sentencing order, he would impose the maximum terms of 65 years for the murder conviction. He would further order the sentence to be served consecutive to the sentences the trial court has already imposed for attempted murder and carrying a handgun without a license.