

FILED

Sep 28 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Mark K. Leeman
Leeman Law Office and Cass
County Public Defender
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Brandon Battering,

*Appellee-Defendant.*

September 28, 2017

Court of Appeals Case No.
66A03-1702-CR-315

Interlocutory Appeal from the
Pulaski Circuit Court

The Honorable Michael A. Shurn,
Judge

Trial Court Cause No.
66C01-1512-F1-3

**Bradford, Judge.**

# Case Summary

[1] In late 2015, Appellee-Defendant Brandon Battering was accused of sexually molesting his then-twelve-year-old step-sister and sending her an explicit message on Facebook. The instant interlocutory appeal stems from the trial court's order granting Battering's motion to suppress certain pre-trial statements made by Battering to investigating officers. We affirm.

# Facts and Procedural History

[2] According to the allegations supporting the charges filed in the underlying criminal case, on November 29, 2015, the Pulaski County Sheriff's Department received a report that Battering had engaged in unlawful sexual behavior with and sent a sexually explicit Facebook message to his then-twelve-year-old step-sister, B.R.[1] On December 3, 2015, Battering voluntarily appeared at the Lafayette Police Department and participated in a lengthy interview with Pulaski County Sheriff's Deputy Nicolas Bowyer and Lafayette Police Department Detective-Sergeant Robert A. Goldsmith. During the lengthy interview with Deputy Bowyer and Detective-Sergeant Goldsmith, Battering discussed, among other things, the allegations made by B.R. Battering initially denied B.R.'s allegations.

---

[1] We remind the reader that given the fact that the instant appeal comes to us as an interlocutory appeal from the trial court's ruling on a pre-trial motion, the allegations levied against Battering remain just that: allegations. Battering has yet to be found guilty of any of the alleged criminal acts.

[3] At one point during the lengthy interview, Battering indicated that he was "p[*****] off" and was "done with answering questions right now[.]" Appellant's App. Vol. II–Confidential, pp. 169, 170. Immediately after making this statement, Battering told Detective-Sergeant Goldsmith that "You guys done p[*****] me off and have me in a bad a[**] mood now." Appellant's App. Vol. II–Confidential, p. 170. Detective-Sergeant Goldsmith continued to talk to Battering after Battering indicated that he did not wish to answer any more questions. Eventually, at Detective-Sergeant Goldsmith's urging and direction, Battering continued on with the interview. By the end of the interview, Battering made incriminating statements in which he admitted to some, but not all, of B.R.'s allegations.

[4] The next day, on December 4, 2015, Appellant-Plaintiff the State of Indiana ("the State") charged Battering with one count each of Level 1 felony child molesting, Level 4 child molesting, and Level 5 felony child solicitation. On January 13, 2017, Battering filed a motion to suppress the pre-trial statements he made during his interview with Deputy Bowyer and Detective-Sergeant Goldsmith. The trial court conducted a hearing on Battering's motion on January 19, 2017. The next day, on January 20, 2017, the trial court issued a written order granting Battering's motion to suppress.

[5] Also on January 20, 2017, the State moved to have the trial court's order certified for interlocutory appeal. The State's request was granted that same day. The State subsequently requested that this court accept jurisdiction over

the matter, which we did on March 17, 2017. This interlocutory appeal follows.

# Discussion and Decision

[6] The State contends that the trial court erred in granting Battering's motion to suppress the statements he made during the December 3, 2015 interview with Deputy Bowyer and Detective-Sergeant Goldsmith. It is well-settled that when an individual "'indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" *Washington v. State*, 808 N.E.2d 617, 623 (Ind. 2004) (quoting *Miranda v. Arizona*, 384 U.S. 436, 173-74 (1966)). "An assertion of *Miranda* rights must be clear and unequivocal, and in determining whether a person has asserted his or her rights, the defendant's statements are considered as a whole." *Clark v. State*, 808 N.E.2d 1183, 1190 (Ind. 2004). "Although there are no particular words of legal magic to cut off questioning, a suspect must do more than express reluctance to talk" in order to invoke his right to remain silent. *Powell v. State*, 898 N.E.2d 328, 337 (Ind. Ct. App. 2008). Review of whether an individual has invoked his right to remain silent is "intensely fact-sensitive." *Id.* (citing *Haviland v. State*, 677 N.E.2d 509, 514 (Ind. 1997)).

[7] Approximately half way through Battering's lengthy interview with Deputy Bowyer and Detective-Sergeant Goldsmith, Battering stated "Honestly, I'm done with answering questions right now, honestly." Appellant's App. Vol. II–Confidential, p. 170. After Detective-Sergeant Goldsmith responded "Okay,"

Battering went on to say "You guys done p[*****] me off and have me in a bad a[**] mood now." Appellant's App. Vol. II–Confidential, p. 170. Detective-Sergeant Goldsmith continued, stating the following:

> [Det.-Sgt. Goldsmith]: Okay. You understand it's nothing personal. They're just doing an investigation. I was watching the interview. I'm seeing some things, and I wanted to ask some questions. I've interviewed a lot of people in these situations just like yours. It doesn't mean the person's a monster. It doesn't mean they're mean. It just -- I'm just telling you. Sometimes people make mistakes and when -- and watching this, I wondered based on what little information I had is if you made a mistake. I really did, and that's why I wanted to come in and talk to you --
>
> [Battering]: Okay.
>
> [Det.-Sgt. Goldsmith]: -- because I've talked to other people before, and they said and I'm just -- I understand you're saying you're frustrated and you're irritated. I get it but I see your lip quiver. I see your hands shake. I see your shirt shake. I can see your heartbeat. Your chest is a little tight, and your shoulders are tight, and I've seen people like that before.
>
> I've seen people like that before when they've been accused, and I've seen people like that before when they've done those things, and I've watched them talk about it after the fact because they've, you know, they want to say, "I'm not a monster. I'm not this bad guy. I, I did this once, and I'm sorry for it. I, I screwed up," and then you can watch them {indicating} relax, and then they tell the story.
>
> They work with people, and they get some help. I heard you mention you're already talking to a counselor about some relationship issues and stuff. I get it. You don't want to dive into relationships, and you can do that. You want to be loved. You

want to feel loved.  One of the --

[Battering]:                    Well, honestly, I want to have fricking
a life and a house --

[Det.-Sgt. Goldsmith]:    I know you do.

[Battering]:                    -- and a car and be able to take care of
my kids --

[Det.-Sgt. Goldsmith]:    I would too.

[Battering]:                    -- and actually be successful for once.

[Det.-Sgt. Goldsmith]:    I know what --

[Battering]:                    That's what I want.

[Det.-Sgt. Goldsmith]:    You want that --

[Battering]:                    But it never happens.

[Det.-Sgt. Goldsmith]:    It could, Brandon.  It could.  It
absolutely could.

[Battering]:                    No.  It never does.

[Det.-Sgt. Goldsmith]:    Yeah.  It can.  It can.  You know why?
Look at me a second.  Get a Kleenex and wipe your eyes.
There's nothing wrong with crying.  That's happened a few times
in here today.  There's nothing wrong with it, Brandon, but, but
some things have to happen for you to get there.  You've got to
come to grips with some things that happened, get those things
out there, be honest with yourself, be honest with your family,
and move on.  That, that's what, that's what has to happen, and
you can talk to a counselor, and you can work on those
relationship things and any other feelings you have.  If, if you

have these feelings where you're attracted to whatever woman, young lady is showing you affection, there's nothing wrong with that. You just got to learn how to control those feelings, and that's, that's why no one watching you and watching this and your demeanor and things are changing, I think you want help.

I don't think you're a monster. I think you're a person that made a mistake. I really do. I don't think you're a bad person, and you can start right here today coming to grips with some things and go down this road of getting some help. I really do, and I think you want to do that, but it's hard.

Appellant's App. Vol. II–Confidential, pp. 170-72.

[8]     Review of the transcript of the interview demonstrates that while Battering eventually re-engaged in the interview, he did so at Detective-Sergeant Goldsmith's urging and direction and only after Detective-Sergeant Goldsmith continued to talk to him in a manner that was unquestionably designed to pull him back into the conversation. Neither Detective-Sergeant Goldsmith nor Deputy Bowyer reminded Battering of his right to remain silent before continuing on with the interview.

[9]     Given the specific facts and circumstances surrounding Battering's statement that he was "done with answering questions right now," we conclude that Battering's statement demonstrated an unequivocal invocation of the Fifth Amendment right to remain silent. As such, we further conclude that the trial court properly suppressed Battering's statement to Deputy Bowyer and Detective-Sergeant Goldsmith. We therefore affirm the decision of the trial court.

The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.