## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2018, 6:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David E. Proffitt,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 20, 2018

Court of Appeals Case No.
40A05-1505-CR-473

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause No.
40C01-1212-FB-48

**Najam, Judge.**

# Statement of the Case

David E. Proffitt appeals his convictions following a jury trial for three counts of dealing in a narcotic drug, as Class B felonies. He presents four issues for our review:

1. Whether the trial court abused its discretion when it admitted into evidence his statements made during two interrogations.

2. Whether application of the incredible dubiosity rule establishes that there is insufficient evidence to support his convictions.

3. Whether the trial court committed fundamental error when it admitted allegedly prejudicial character evidence.

4. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm and remand with instructions.[1]

# Facts and Procedural History

In early 2012, Jennings County Sheriff's Lieutenant Brian Talkington received a phone call from a woman who claimed to be Proffitt's sister-in-law. She told Lieutenant Talkington that Proffitt was getting "a lot of pills" through his wife's

---

[1] We held oral argument in this case on June 4, 2018, at the Mitchell Opera House in Mitchell, Indiana on the 200th anniversary of the first court hearing held in Lawrence County on June 4, 1818. We thank counsel for their excellent advocacy, and we thank the Lawrence County Bar Association and the Lawrence County Bicentennial Committee for inviting us to hold the oral argument as part of Lawrence County's Bicentennial celebration.

health insurance with the Federal government. Tr. Vol. III at 377. Lieutenant Talkington then contacted David White, a Special Agent with the Inspector General for the United States Department of Health and Human Services, and Agent White stated that he had also been contacted and informed that Proffitt was "receiving high volumes of prescription narcotics which seemed beyond the scope of medical necessity" for his personal use. *Id*. at 453. Agent White verified that information by checking a database "that basically logs all prescription narcotics, how they're paid for, quantities people get, things like that." *Id*. at 454. Accordingly, Agent White began investigating Dr. Anthony Mims, who had been prescribing the narcotics for Proffitt, and Lieutenant Talkington initiated four controlled drug buys between confidential informants and Proffitt.

[4] After the last controlled buy, Lieutenant Talkington concluded that it was time to arrest Proffitt. Lieutenant Talkington was concerned for the safety of law enforcement if they were to make the arrest at his home. Proffitt had previously approached the local jail and offered to provide "pizzas to the inmates on a commissary situation [sic]." *Id*. at 415. Accordingly, Lieutenant Talkington arranged for Proffitt to come to the jail on the pretense of making arrangements for the pizza sales. When Proffitt arrived at the jail on December 4, 2012, Lieutenant Talkington, Agent White, and other law enforcement officers introduced themselves, told Proffitt that they were not interested in pizza sales, and read him his *Miranda* rights. Proffitt's live-in girlfriend, Brandy Caudill, had accompanied him inside the jail, and Proffitt's son waited in the car.

During the first interview, Proffitt denied that he sold pills, but he acknowledged that he received approximately 1,000 oxycodone and hydrocodone pills every three months. After Agent White interrogated Proffitt, Lieutenant Talkington obtained a search warrant for Proffitt's residence and a storage unit and placed him under arrest.

[5] Approximately six days later, Proffitt notified jail personnel that he wanted to talk to "federal agents" and to "cooperate with them[.]" *Id*. at 422. Accordingly, Agent White again read Proffitt his *Miranda* rights and conducted a second interrogation of Proffitt on December 10. Proffitt again denied that he sold pills, but he told Agent White that Dr. Mims gave him the prescriptions in exchange for gift cards and silver, that Dr. Mims did not examine Proffitt during Proffitt's visits, and that Proffitt would direct Dr. Mims on what prescriptions to write.[2]

[6] The State charged Proffitt with four counts of dealing in a narcotic drug, as Class B felonies; conspiracy to commit dealing in a narcotic drug, as a Class B felony; and maintaining a common nuisance, a Class D felony. Prior to trial, Proffitt filed a motion to suppress evidence alleging that both of his interrogations were conducted under duress and in violation of his "state and

___

[2] During his trial testimony, Agent White indicated that, "[a]fter Mr. Proffitt did not cooperate," there had been no further investigation of Dr. Mims; that Dr. Mims had not been charged with any crime, and that Agent White had referred the case to a different agency. *Id*. at 470.

federal protections against self-incrimination[.]" Appellant's App. Vol. II at 107. The trial court denied that motion after a hearing.

[7] At his ensuing jury trial, the State presented as evidence the testimony of the two confidential informants, Emma Kiefer and Jessica Johnson; the testimony of Lieutenant Talkington; the testimony of Agent White; the audio recordings from the four controlled buys; and the audio recordings from the two interrogations. Proffitt presented as evidence his testimony and the testimony of Caudill.

[8] At the conclusion of his trial in November 2014, the jury acquitted Proffitt of one count of dealing in a narcotic drug, but found him guilty of the remaining five counts. The trial court entered judgment of conviction accordingly, but, "for the purposes of sentencing only," the court "vacated" Proffitt's convictions for conspiracy to commit dealing in a narcotic drug and maintaining a common nuisance. Appellant's App. Vol. III at 111 (emphasis in original). And the court sentenced Proffitt to an aggregate term of thirty-four years executed. This appeal ensued.

## Discussion and Decision

### Issue One: Admission of Statements

[9] Proffitt first contends that the trial court abused its discretion when it admitted into evidence statements he made during his interrogations with law enforcement. Proffitt initially challenged the admission of this evidence through a motion to suppress but now appeals following a completed trial.

Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Lanham v. State*, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010). A trial court is afforded broad discretion in ruling upon the admissibility of evidence, and we will reverse such a ruling only when the defendant has shown an abuse of discretion. *Id.* at 422. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.*

[10] Proffitt asserts that the admission of his statements at trial violated Article 1, Section 14 of the Indiana Constitution, which provides that no person, in any criminal prosecution, shall be compelled to testify against himself. In particular, he maintains that his statements to law enforcement were made under duress and were, therefore, not voluntary. Where, as here, a defendant challenges the voluntariness of a confession under the Indiana Constitution, the State is required "to prove beyond a reasonable doubt that the defendant voluntarily waived his rights and that the confession was voluntarily given." *Malloch v. State*, 980 N.E.2d 887, 901 (Ind. Ct. App. 2012). "When evaluating a claim that a statement was not given voluntarily, the trial court is to consider the totality of the circumstances, including whether there is police coercion, the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant." *Id*.

[11]    Proffitt alleges that his statements during the first interrogation were not voluntary because he was promised leniency when officers told him he could help himself and because he "was told that he had to talk, and that it was a federal crime to lie to law enforcement." Appellant's Br. at 18. We must disagree. While a confession is inadmissible if it was obtained by promises of mitigation or immunity, "vague and indefinite statements by the police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible." *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004). "Further, '[s]tatements by police expressing a desire that a suspect cooperate and explaining the crimes and penalties that are possible results are not specific enough to constitute either promises or threats.'" *Id.* (quoting *Kahlenbeck v. State*, 719 N.E.2d 1213, 1217 (Ind. 1999)). Here, while Lieutenant Talkington and Agent White both told Proffitt during the interviews that he could help himself, neither officer made any specific promises that Proffitt would receive a reduction in his charges or sentence. And Agent White's statement that it is a federal crime to lie to a law enforcement officer was not specific enough to constitute a threat. The statements by the officers were an attempt to induce Proffitt to provide information, but they did not constitute promises of benefits or threats that rendered Proffitt's statements involuntary. *See id.*

[12]    Proffitt also alleges that his statements during the first interrogation were not voluntary because he was worried about the well-being of his son, who was sitting in the car outside of the jail. But both Lieutenant Talkington and Agent

White testified that Proffitt never mentioned that his son was sitting alone in the car. And nothing in the record persuades us that Proffitt's statements during the first interview were involuntary. Officers read Proffitt his *Miranda* rights and asked Proffitt if he understood his rights, which he indicated he did. And Lieutenant Talkington did not observe any behavior during the ninety-minute interview that made him believe that Proffitt was not mentally competent. Rather, Lieutenant Talkington testified at the hearing on the motion to suppress that Proffitt appeared "quite confident." Tr. Vol. II at 40. And, even though Proffitt started to sweat at one point, a nurse examined him and said he was "fine." *Id*. Similarly, Agent White testified at the suppression hearing that Proffitt appeared very lucid at all times and that he was "very calm and coherent." *Id*. at 61.

[13] Further, even though Agent White continued to ask Proffitt about selling pills, Proffitt maintained his innocence and stated that he never sold any of the pills he had been prescribed. Indeed, Proffitt acknowledges on appeal that he "did not make any statements during the December 4, 2012, interrogation that were of significant inculpatory value." Appellant's Br. at 18. Proffitt's statements made during the first interview were not involuntary, and the trial court did not abuse its discretion when it admitted those statements.

[14] Proffitt also asserts that his statements during the second interrogation were involuntary because, prior to the second interrogation, he was "subjected to abusive action" in the jail, including being choked, tazed, and placed in an isolation cell. *Id*. at 19. He also contends that the statements were involuntary

because he was "under substantial emotional and physical duress" due to the "anguish of not knowing the fate of his mentally handicapped child" and due to sickness as a result of withdrawal from narcotics. *Id.* at 20. Proffitt maintains that, under these "extraordinary circumstances, no waiver or consent can be considered voluntary" and the trial court should have excluded his statements at trial. *Id.*

[15] But, again, nothing in the record convinces us that Proffitt's statements during the second interview were involuntary. Proffitt initiated the second interview. And Proffitt was again advised of his rights and signed a waiver of rights form. Further, the interview was not excessive in duration as it only lasted approximately one hour. Additionally, Agent White testified during the suppression hearing that Proffitt was "very coherent" and "[v]ery calm" during the second interview. Tr. Vol. II at 63. Agent White also testified that Proffitt did not seem to be in any physical distress and that he did not notice anything to make him think that Proffitt was mentally or emotionally unable to answer the questions. Further, Agent White testified that it never appeared as though Proffitt was under the influence of any opiates or that he was experiencing any withdrawal symptoms. Because Proffitt's statements during the second interrogation were not involuntary, the trial court did not abuse its discretion when it admitted those statements at trial.

## Issue Two: Sufficiency of the Evidence

[16] Proffitt also contends that the State presented insufficient evidence to support his convictions. Initially, we note that the trial court entered judgment of

conviction on all five counts on which the jury entered guilty verdicts. And, during the sentencing hearing, both parties agreed that "the conspiracy conviction and the maintaining a common nuisance conviction at least for the purposes of sentencing are to be vacated because they are part of the other crimes." Tr. Vol. VI at 1054-55. Subsequently the trial court in its sentencing order vacated the two convictions "for purposes of sentencing only[.]" Appellant's App. Vol. III at 111.

[17] However, both the Chronological Case Summary and the abstract of judgment indicate that the convictions for Counts V and VI were "merged." Appellant's App. Vol. II at 18, Appellant's App. Vol. III at 109. As such, it is apparent that the trial court simply merged the convictions for purposes of sentencing but did not vacate them. It is well settled that if a trial court enters judgment of conviction on a jury's guilty verdict, "then simply merging the offenses is insufficient and vacation of the offense is required." *Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013). Here, because the trial court entered judgment of conviction on all five of the jury's guilty verdicts and attempted to "merge" two of the convictions for purposes of sentencing, we remand with instructions for the trial court to vacate Proffitt's convictions for conspiracy to commit dealing in a narcotic drug and maintaining a common nuisance. Accordingly, we address only the sufficiency of the evidence to support his convictions for three counts of dealing in a narcotic drug.

[18] For those convictions, Proffitt specifically contends that there was insufficient evidence because his convictions were based only on the testimony of Kiefer,

Johnson, and Lieutenant Talkington, and he claims that the testimony from each of those witnesses was "incredibly dubious." Under the incredible dubiosity rule, "a court will impinge on the jury's responsibility to judge the credibility of witnesses only when it has confronted 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). For the incredible dubiosity rule to apply, "the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Wolf v. State*, 76 N.E.3d 911, 916 (Ind. Ct. App. 2017). "Application of the incredible dubiosity rule is limited to cases with very specific circumstances because we are extremely hesitant to invade the province of the jury." *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015). For the incredible dubiosity rule to apply, there must be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion, and 3) a complete absence of circumstantial evidence." *Moore*, 27 N.E.3d at 756.

[19] Here, Proffitt specifically contends that the testimony from Kiefer and Johnson was incredibly dubious because of their drug addictions and because they were coerced by the State's threat of prosecution. And Proffitt contends that Lieutenant Talkington's testimony was incredibly dubious in light of false statements he had given in his report and in a previous hearing. But the State

contends that "the invocation of the 'incredible dubiosity' rule fails for a number of reasons." Appellee's Br. at 28. The State is correct.

[20] First, there was not a "sole testifying witness." *Moore*, 27 N.E.3d at 756. Rather, the State presented the testimony of Kiefer, Johnson, and Lieutenant Talkington as evidence, and each witness' testimony was consistent with the testimony of the other witnesses. Further, there was not "a complete absence of circumstantial evidence" as the State presented circumstantial evidence that corroborated the witnesses' testimony, including the audio recordings of the controlled buys and the pills that the confidential informants returned to the police officers after the buys. *Id.* As such, the incredible dubiosity rule does not apply.[3] Proffitt's arguments on appeal merely seek to have this court reassess the weight and credibility of the evidence, which we will not do. The State presented sufficient evidence to support Proffitt's convictions.

### Issue Three: Character Evidence

[21] Proffitt also contends that the trial court committed fundamental error when it permitted Caudill's testimony regarding a houseguest who resided with Proffitt and Caudill in 2011. Proffitt acknowledges that his own counsel elicited that

---

[3] For the first time at oral argument, Proffitt asserted that the incredible dubiosity rule should apply because, at least in regards to the last two controlled buys, Johnson was the only witness to the offense. However, the incredible dubiosity rule still does not apply because the State presented as evidence the audio recordings of the controlled buys and the pills Johnson purchased, which at least partially corroborated Johnson's testimony.

testimony on direct examination during his case-in-chief, but he does not assert a claim of ineffective assistance of counsel.

[22] As our Supreme Court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quotation marks and citations omitted). "To prove fundamental error," the appellant must show "that the trial court should have raised the issue *sua sponte* . . . ." *Taylor v. State*, 86 N.E.3d 157, 162 (Ind. 2017).

[23] Specifically, Proffitt maintains that Caudill's testimony that Proffitt and the houseguest had showered together, that the houseguest had requested a sexual encounter with Proffitt and Caudill, and that the houseguest's mother threatened to call law enforcement to report that Proffitt had raped the houseguest unduly prejudiced him in violation of Indiana Evidence Rule 404(b). Proffitt contends that the "overwhelming prejudicial effect of Caudill's testimony was to invite the jury to speculate as to Proffitt's character."

Appellant's Br. at 26. He further asserts that "[s]uch a salacious innuendo planted in the minds of a jury cannot be harmless and inevitably would have directly or indirectly affected the jury's view of the evidence and consideration of the issues." *Id*. at 27.

But, as noted above, Proffitt's own counsel elicited the challenged testimony from Caudill. Accordingly, Proffitt has invited the error, if any. The invited error doctrine forbids a party from taking advantage of an error that he "commits, invites, or which is the natural consequence of [his] own neglect or misconduct." *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). And "'invited error is not fundamental error' and is not subject to appellate review[.]" *Cole v. State*, 28 N.E.3d 1126, 1136 (Ind. Ct. App. 2015) (quoting *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995)). Because any error in the court's admission of Caudill's testimony was invited by Proffitt, his fundamental error claim fails.

### *Issue Four: Sentencing*

Finally, Proffitt contends that his sentence in inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct"

result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), decision clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[26] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[27] Proffitt was convicted of three counts of dealing in a narcotic drug, as Class B felonies. The sentencing range for a Class B felony is six years to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-4.5 (2018). Here, the trial court identified as mitigating factors the fact that Proffitt had completed many self-help programs while incarcerated and he had been gainfully

employed for most of his adult life. And the trial court identified the following aggravating factors: Proffitt's criminal history, which includes twenty-seven felony charges and eighteen misdemeanor charges that resulted in two felony convictions and four misdemeanor convictions; that Proffitt was stealing taxpayer funds when he dealt drugs paid for by taxpayers; that Proffitt has no high school diploma or GED; that Proffitt has had his probation revoked once; that there have been several incidents of jail misconduct; that Proffitt's children were in his home during the drug transactions; and that Proffitt's dealing operation was an "ongoing and large scale operation." Appellant's App. Vol. III at 112. Accordingly, the trial court sentenced Proffitt to an aggregate term of thirty-four years with the Department of Correction.

[28] Proffitt maintains that his sentence is inappropriate in light of the nature of the offenses because there was "no evidence that anyone was directly injured or harmed by any conduct Proffitt is alleged to have engaged in." Appellant's Br. at 30. He also asserts that there was no "evidence of violence, substantial quantity or prolonged duration[.]" *Id.* But the evidence shows that Proffitt obtained one thousand oxycodone and hydrocodone pills every three months and that he would sell those narcotics to individuals within his community. As such, he has contributed to the opioid epidemic. Additionally, Proffitt used his wife's government insurance to purchase the pills. And, as the trial court found, Proffitt's children were present in the home during the drug transactions. We cannot say that Proffitt's sentence is inappropriate in light of the nature of the offenses.

[29]     Proffitt also contends that his sentence is inappropriate in light of his character because he was a forty-five-year-old man with "serious medical issues." *Id.* at 28. He also contends that he "had taken advantage of every option available to improve his life" and that his "behavior and conduct while incarcerated demonstrate a desire to return to a lawful lifestyle as a productive member of society." *Id.* But Proffitt has not demonstrated that his sentence is inappropriate in light of his character. Proffitt has a criminal history that includes two prior felony convictions and four prior misdemeanor convictions. Additionally, he has had his probation revoked once and he has violated jail rules on at least three occasions. Accordingly, we conclude that Proffitt's sentence is not inappropriate and we affirm his sentence.

### Conclusion

[30]     In sum, we hold as follows: the trial court did not abuse its discretion when it admitted into evidence statements Proffitt made during two interrogations because those statements were not involuntary; the incredible dubiosity rule does not apply because there was more than one testifying witness and because there was not a complete lack of corroborating evidence; the trial court did not commit fundamental error when it admitted Caudill's testimony because Proffitt invited any error; and Proffitt's sentence is not inappropriate in light of the nature of the offenses and his character. But we remand with instructions for the trial court to vacate Proffitt's convictions for conspiracy to commit dealing in a narcotic drug and maintaining a common nuisance.

[31]     Affirmed and remanded with instructions.

May, J., and Brown, J., concur.